**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION**

MICHAEL ANDREW JOHNSON                                                                  PLAINTIFF
ADC #110504

v.                                            5:19-cv-00242-BRW-JJV

WENDY KELLEY, *et al*.                                                                 DEFENDANTS

**PROPOSED FINDINGS AND RECOMMENDATIONS**

**INSTRUCTIONS**

The following recommended disposition has been sent to United States District Judge Billy Roy Wilson.  Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection.  If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection.  Your objections must be received in the office of the United States District Court Clerk no later than fourteen days from the date of the findings and recommendations.  Failure to file timely objections may result in waiver of the right to appeal questions of fact.

Mail your objections to:

Clerk, United States District Court
Eastern District of Arkansas
600 West Capitol Avenue, Suite A149
Little Rock, AR 72201-3325

**DISPOSITION**

**I.     INTRODUCTION**

Michael Andrew Johnson ("Plaintiff") sued former Arkansas Department of Correction Director Wendy Kelley, Lieutenant Byron Brown,[1] Security Officer Paroon, and Director's Assistants Jada Lawrence, Lyn Bennett, and Mindy Shell in their personal and official capacities. (Doc. Nos. 2, 120.)  Plaintiff's claims against Defendants Paroon, Lawrence, Bennett, and Shell have been dismissed.  (Doc. Nos. 25, 67, 69.)  Plaintiff's failure to protect claim against Defendants Kelley and Brown remains pending.

Plaintiff alleges Defendants Kelley and Brown failed to protect him against an attack from other inmates at the Wrightsville Unit[2] of the ADC.  (Doc. No. 102.)  On November 27, 2018, Plaintiff reported to Defendant Brown that he "was having Aryan problems." (Doc. No. 120 at 1.) In response, that same day Defendant Brown moved Plaintiff from 5 Barracks to 1 Barracks.  (*Id.*) On November 28, 2018, inmates Faught, Geels, and Chism stabbed Plaintiff while he was sleeping. (Doc. No. 120 at 1, 15.)  Plaintiff suffered nine stab wounds and required surgery.  (Doc. No. 2 at 18.)  Plaintiff also suffers from mental anguish and a mental disorder as a result of the attack. (Doc. No. 120 at 2, 17.)

Plaintiff alleges "[Faught, Geels, and Chism] . . . were all part of Aryan gangs and are on gang files."  (Doc. No. 2 at 18.)  Plaintiff also alleges Faught was "a head gang member of the group W.A.R" and was on Plaintiff's "enemy alert." (Doc. No. 120 at 14.)  Plaintiff asserts he

---

[1] The Clerk of the Court is directed to change Defendant Brown's name on the docket to Byron Brown.  (Doc. No. 37.)

[2] Plaintiff is currently housed in the Maximum Security Unit of the ADC.

wrote Defendant Kelley numerous times "and advised her [he] had Aryan hits on [his] life." (*Id.* at 15.) Plaintiff seeks damages. (*Id.* at 2.)

Defendants Kelley and Brown (collectively "Defendants") have filed a Motion for Summary Judgment. (Doc. Nos. 180-182.) Plaintiff has responded (Doc. No. 184) and this matter is ripe for a decision. After careful consideration, I recommend Defendants' Motion be granted and Plaintiff's claims be dismissed with prejudice.

## II.   SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials[.]" Fed. R. Civ. P. 56(c)(1)(A).

When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party. *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002). The nonmoving party may not rely on allegations or denials, but must demonstrate the existence of specific facts that create a genuine issue for trial. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007). The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy. *Id.* (citations omitted). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012).

Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

## III. ANALYSIS

Defendants argue sovereign immunity bars Plaintiff's official capacity damages claims against them. (Doc. No. 181.) Defendants further argue they are entitled to qualified immunity on Plaintiff's personal capacity claims against them. (*Id*.) For the reasons set out below, I agree.

### A. Official Capacity Damages Claims

Plaintiff sued Defendants in the personal and official capacities. Plaintiff's § 1983 claims against Defendants in their official capacities are the equivalent of claims against the State of Arkansas. Plaintiff's official capacity damages claims are barred by Eleventh Amendment. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989). Accordingly, Defendants are entitled to summary judgment in connection with Plaintiff's official capacity damages claims.

### B. Qualified Immunity

Defendants maintain they are entitled to qualified immunity. (Doc. No. 181 at 19.) Qualified immunity protects government officials who acted in an objectively reasonable manner and shields an official from liability when his or her conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is a question of law, not a question of fact. *McClendon v. Story Cty. Sheriff's Office*, 403 F.3d 510, 515 (8th Cir. 2005). Thus, issues concerning qualified immunity are appropriately resolved on summary judgment. *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (the privilege is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial").

To determine whether defendants are entitled to qualified immunity, courts generally consider two questions: (1) whether the facts alleged or shown, construed in the light most favorable to the plaintiff, establish a violation of a constitutional or statutory right; and (2) whether that right was so clearly established that a reasonable official would have known that his or her actions were unlawful. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009); *see also Saucier v. Katz*, 533 U.S. 194, 201 (2001). Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Nelson v. Corr. Med. Servs.*, 583 F.3d 522, 528 (8th Cir. 2009) (quoting *Pearson*, 555 U.S. at 236). Defendants are entitled to qualified immunity only if no reasonable fact finder could answer both questions in the affirmative. *Id*.

### C. Failure to Protect Claims

Plaintiff alleged Defendants failed to protect him from an attack by other inmates. A failure to protect claim is composed of two elements. First, the claimant must demonstrate that his conditions of incarceration posed a substantial risk of serious harm. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Second, the claimant must demonstrate that the defendant prison official knew of and disregarded the risk to his safety. *Id*. at 837. The second prong requires a finding that the defendant was deliberately indifferent. *See Whitson v. Stone County Jail*, 602 F.3d 920, 923 (8th Cir. 2010) (in analyzing failure to protect claims "the subjective inquiry regarding an official's state of mind is one of deliberate indifference to inmate health or safety.") Deliberate indifference is akin to criminal recklessness. *See Olson v. Bloomberg*, 339 F.3d 730, 736 (8th Cir. 2003).

#### 1. Defendant Kelley

Plaintiff maintains Defendants were aware of the risk to him from Faught, Geels, and Chism. (Doc. No. 180-3 at 32:14-34:7.) Plaintiff, however, testified that neither Faught, Geels,

nor Chism were on Plaintiff's enemy alert list. (*Id.* at 53:8-54:14.)  Plaintiff said he wrote to Defendant Kelley about his "Aryan problems," but did not specifically name Faught, Geels, and Chism. (*Id.* at 55:17-56:15.)  Plaintiff testified that there are five Aryan gangs in the ADC: Aryan Brotherhood; Aryan Nation; White Aryan Resistance; New American Empire; and AC. (*Id.* at 25:21-26:15).  It appears Plaintiff, who identifies himself as Aryan Brotherhood, felt threatened by rival Aryan gangs. (*Id.* at 25:19-25:20).

Defendant Kelley attached Plaintiff's correspondence in support of her Motion. (Doc. No. 180-1.)  The letters reveal:

- On November 30, 2017, Plaintiff wrote Jada Lawrence, Defendant Kelley's assistant, in connection with parole, and Ms. Lawrence responded. (*Id.* at 7-8.)

- Plaintiff wrote Ms. Lawrence again on January 15, 2018 from the Varner Unit regarding concerns about an Inmater Carver; again Ms. Lawrence responded. (*Id.* at 9-10.)

- On May 7, 2018, Plaintiff wrote Defendant Kelley from the Cummins Unit requesting to be put in protective custody because other inmates were trying to stab him for informing on Inmate Carver. (*Id.* at 11.)  Ms. Lawrence responded to Plaintiff's letter, informing Plaintiff that she sent a copy of the letter to Warden Straughn for his review. (*Id.* at 13.)

- On June 4, 2018, Plaintiff again wrote Ms. Lawrence about Inmate Carver; Ms. Lawrence responded. (*Id.* at 14-15.)

- Plaintiff wrote Defendant Kelley on September 12, 2018 informing her that in 2013 he was assaulted by Inmates McFarland, Morre, Shelley, and Hatcher, all "Aryan," because he was Aryan Brotherhood.[3]  (Doc. No. 180-1 at 16.)  Plaintiff claimed all "Aryans" were against him and he sought transfer from the Cummins Unit, and also brought up his class in

---

[3] Plaintiff is a member of the Aryan Brotherhood. (Doc. No. 180-3 at 25:19-25:20).

connection with a parole issue. (*Id*. at 17.) Ms. Lawrence responded to the letter. (*Id*. at 18.)

- Plaintiff wrote Defendant Kelley on September 17, 2018 explaining he needed Class II to go up for parole. (Doc. No. 180-1 at 21.)

- On October 2, 2018, Plaintiff wrote Defendant Kelley explaining he needs Class II to see the Parole Board, and that he needed to get somewhere safe because of hits on Aryan Brotherhood. (*Id*. at 19.) Plaintiff explained he had been attacked at Grimes, Varner, Tucker, Brickeys, and Cummins, and sought a transfer. (*Id*.) Mindy Shell responded to the letter. (*Id*. at 20.)

- Plaintiff wrote Ms. Lawrence on October 14, 2018, from the Cummins Unit setting out concerns for his safety in connection with "Aryan Shot Caller Michael Hatcher" and referring to Inmate Carver. (*Id*. at 22-23.) Lyn Bennett responded to the letter. (*Id*. at 24.)

- On October 16, 2018, Plaintiff wrote Defendant Kelley regarding parole. (Doc. No. 181 at 25.) Mindy Shell responded. (*Id*. at 26.)

As Plaintiff acknowledged, none of the correspondence in the record mentions Plaintiff felt threatened by Inmates Geels, Faught, or Chism. And Defendant Kelley maintains she was not aware of any problems between Plaintiff and Inmates Geels, Faught, or Chism before November 28, 2019. (*Id*., at 6.)

Further, none of the correspondence establishes that Defendant Kelley personally ever received or read Plaintiff's letters. And Plaintiff's testimony reveals he "felt like at that time Jada Lawrence wasn't giving [his] mail to Wendy Kelley." (Doc. No. 180-3 at 98:3-98:13.) When asked if he believed Wendy Kelley ever received any of Plaintiff's letters, he testified

> I really don't. No, I don't. I personally don't believe that at all. That's my opinion.
> No, I don't. I mean, I wrote them to her, I wrote them to her assistant, because if

7

> she did with her job title being director with all these serious letters, she would not do that. There's no way. You can't make me believe a director just throwed me off to get hurt like that. These are repeated letters.

(*Id*. at 98:25-99:7.)

In his Response to Defendants' Motion, Plaintiff asserts he alerted Defendant Kelley that he was "in fear of [his] life at all Units." (Doc. No. 184 at 3.) Plaintiff's perceived threat came not just from one gang, but from at least four other white supremacist groups. An inmate's complaints of "general fear for his safety" do not establish that a defendant "acted with deliberate indifference by not placing him in protective custody." *Robinson v. Cavanaugh*, 20 F.3d 892, 895 (8th Cir. 1994).

In his letters to Defendant Kelley, Plaintiff asked for protective custody and a transfer out of Cummins. He was transferred from Cummins to Wrightsville in October 2018. (Doc. No. 180-3 at 20:16-20:23.) Plaintiff testified he had been at Wrightsville less than 30 days when the attack occurred. (*Id*.) While there was no protective custody at Wrightsville, Plaintiff was placed in a Barracks in which he said he would feel safe *before* being moved there, after a threat in the Barracks where he originally was housed. (Doc. No. 180-4 at 4.)

In Response to Defendants' Motion, Plaintiff asserts Defendant Kelley knew of the danger to him and failed to protect him. (Doc. No. 184.) But Plaintiff has not come forward with any evidence establishing that Defendant Kelley was aware of a threat to his safety from Inmates Geels, Fraught, or Chism before Plaintiff was attacked. And Plaintiff was transferred out of Cummins as he requested. Based on the record before me, I cannot find that Defendant Kelley violated Plaintiff's constitutional rights.

### 2.    **Defendant Brown**

Defendant Brown is also entitled to qualified immunity, but for different reasons. Defendants argue, among other things, that Plaintiff was not attacked in an Aryan hit, but in retaliation for Plaintiff reporting another inmate's dealings in contraband. (Doc. No. 181 at 17.) But Cody Brown, the other inmate, was also a white supremacist. (Doc. No. 180-3 at 33:21-34:17). And Chism—a white supremacist and member of Aryan Brotherhood's rival gang New American Empire—was Brown's friend. (*Id*. at 52:10-52:16.) Plaintiff believes Inmate Brown directed Chism to carry out the attack on Plaintiff. (*See Id*. at 52:10-52:16.) And Plaintiff "had told [Defendant] Brown [he] was concerned about Wendell Chism because he was friends with [Inmate] Brown who [Plaintiff] had informed on." (*Id*. at 54:15-19.) I find the distinction Defendants try to draw here too fine. Whether the attack was Aryan related remains a fact in dispute. Aryan-related or not, Plaintiff testified that he mentioned a threat from Chism to Defendant Brown. Defendant Brown denies Plaintiff mentioned an Aryan threat or threat from Chism and points to Plaintiff's witness statement in support of his lack of knowledge. (Doc. No. 180-2.) In the statement, Plaintiff mentioned only Inmates Conley and Brown. (*Id*. at 4.) While there remain contested facts regarding Defendant Brown's knowledge of a risk to Plaintiff by Inmate Chism, the dispute nonetheless does not preclude entry of summary judgment in Defendant Brown's favor.[4]

Even assuming Defendant Brown knew of the threat to Plaintiff from Chism, Defendant Brown was not deliberately indifferent to that threat. Plaintiff says he requested protective custody, but Defendant Brown "told [him] they do not have protective custody at the Wrightsville

---

[4] Plaintiff testified that he did not inform Defendant Brown of a threat specifically from Geels or Faught. (Doc. No. 180-3 at 54:20-55:6.)

Unit." (Doc. No. 184 at 4.) Defendant Brown, however, moved Plaintiff from 5 Barracks to 1 Barracks the same day Plaintiff complained to Defendant Brown. (Doc. No. 180-2 at 1; Doc. No. 180-3 at 33:23-34:17.) 1 Barracks is in an entirely separate building than 5 Barracks. (Doc. No. 180-4 at 1.) Plaintiff explained he needed to be moved from 5 Barracks because "the entire barracks was saying [he] was a snitch." (*Id*. at 4.) And Plaintiff wrote that he felt safe in 1 Barracks. (*Id*.) Specifically, Plaintiff wrote "I'll be fine in 1 Bks where I do isolation job. Several people in kitchen where [sic] talking about me being a snitch – I do not fear for my life." (*Id*. at 4.) I note neither Faught, Geels, nor Chism were housed in 1 Barracks. (Doc. No. 120 at 1; Doc. No. 191 at 28.)

Plaintiff testified that after he was placed in 1 Barracks he heard talk that there were "a bunch of Aryans" in the 1 Barracks who were mad at him, but Plaintiff did not report what he heard to Defendant Brown. (Doc. No. 180-3 at 37:7-38:24.) Rather, Plaintiff told a Sergeant Evelyn Smith—not a party to this lawsuit—about the chatter. (*Id*.) There is no evidence in the record to suggest Defendant Brown knew of any threat to Plaintiff *after* Plaintiff was moved to 1 Barracks. Under these circumstances, I find Defendant Brown was not deliberately indifferent to a substantial risk of harm to Plaintiff.

At summary judgment, Plaintiff must support his allegations with evidence creating a genuine issue of material fact. *Wilson v. Smith*, 821 F.3d 963, 970 (8th Cir. 2016) (allegations must be substantiated with sufficient probative evidence); *Bolderson v. City of Wentzville, Missouri*, 840 F.3d 982, 986-87 (8th Cir. 2016) (noting plaintiff's duty to meet proof with proof in affirming summary judgment in defendant's favor). Here, Plaintiff has not come forward with proof creating a genuine issue of material fact that would preclude entry of summary judgment in

Defendants' favor.[5] Accordingly, Defendants Kelley and Brown are entitled to qualified immunity. As such, I recommend summary judgment be entered in Defendants' favor and Plaintiff's claims against them be dismissed with prejudice.

## IV. CONCLUSION

IT IS, THEREFORE, RECOMMENDED that:

1. Defendants' Motion for Summary Judgment (Doc. No. 180) be GRANTED.

2. Plaintiff's claims against Defendants Kelley and Brown be DISMISSED with prejudice.

3. This lawsuit be DISMISSED.

4. The Court certify, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from any Order adopting these recommendations and the accompanying Judgment would not be taken in good faith.

DATED this 9th day of February 2021.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE

---

[5] In addition to Plaintiff's Response to Defendants' Motion (Doc. No. 184), I considered Plaintiff's various Notices filed after Defendants' Motion (Doc. Nos. 185, 187, and 189). To the extent any affidavit submitted by Plaintiff simply contradicts his earlier testimony—as opposed to clarifying ambiguities or confusion in the testimony—I will not take the contradiction into consideration for the purpose of determining if a genuine issue of material fact exists. *See Taylor v. Cottrell, Inc.*, 795 F.3d 813, 818 (8th Cir. 2015).